UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RONALD SMITH,

                Plaintiff-Petitioner,

v.

WARTBURG ADULT CARE
COMMUNITY,

                Defendant-Respondent.

No. 18-CV-12240 (KMK)

OPINION & ORDER

Appearances:

Barry D. Haberman, Esq.
Zachary A. King, Esq.
Law Office of Barry D. Haberman
New City, NY
*Counsel for Plaintiff-Petitioner*

Eric P. Simon, Esq.
Christopher M. Repole, Esq.
Jackson Lewis P.C.
New York, NY
*Counsel for Defendant-Respondent*

KENNETH M. KARAS, United States District Judge:

       Plaintiff-Petitioner Ronald Smith ("Plaintiff") brings this Action seeking vacatur of an August 9, 2018 arbitration award favoring Defendant-Respondent Wartburg Adult Care Community ("Wartburg," or "Defendant"). Before the Court is Plaintiff's Motion to Remand the action to New York State court ("Motion To Remand"), pursuant to 28 U.S.C. § 1447, (Not. of Mot. To Remand (Dkt. No. 14)), and Defendant's Motion To Dismiss Plaintiff's Verified Petition ("Motion To Dismiss"; with the Motion To Remand, the "Motions"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Not. of Mot. To Dismiss (Dkt. No. 15)). For

the reasons explained herein, Plaintiff's Motion To Remand is denied, and Defendant's Motion To Dismiss is denied without prejudice.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Verified Petition (the "Petition"), documents appended to the Petition, and other matters of which the Court may take judicial notice, and are taken as true for purposes of the instant Motions.

Plaintiff is a former employee of Wartburg, which runs a "health care [and] rehabilitative care program for seniors" in Mount Vernon, New York (the "Facility"). (Not. of Removal Ex. A ("Pet.") ¶¶ 9–10 (Dkt. Nos. 4, 4-1).) Plaintiff was hired by Wartburg to work as an on-site cook in the Facility's kitchen and worked in this position for approximately 28 years. (*Id.* ¶ 12.) Plaintiff was a member of 1199 SEIU, United Healthcare Workers East (the "Union") and served as a Union delegate for several years, until the end of his employment at Wartburg. (*Id.*) Before his termination, Plaintiff had not been the subject of disciplinary action at Wartburg, and he had never received "a below satisfactory work evaluation." (*Id.* ¶ 13.)[1] Plaintiff generally arrived at the Facility for the morning shift, and was responsible for preparing daily food and meals for the Facility's residents. (*Id.* ¶ 14.) Plaintiff was required to arrive before any other employees, and while he was alone in the kitchen, he "always listened to music in the morning." (*Id.* ¶ 15.) At the beginning of his employment, Plaintiff listened to music on his "boom box," but as technology evolved, he began using his phone to do so. (*Id.*)

---

[1] Plaintiff notes that there is a record of a meeting that he had with human resources personnel "to discuss matters relating to the employer's handbook [and] policy." (Pet. ¶ 13.)

Morrison Community Living ("Morrison"), an external food service contractor, also contracted with Wartburg to provide "food, nutrition, and dining services" at Wartburg and the Facility. (*Id.* ¶ 11.) Pursuant to this relationship, some of Morrison's employees worked at the Facility. (*Id.* ¶ 16.) One such employee was Christopher Letterese ("Letterese"), who was Plaintiff's supervisor during the relevant period. (*Id.* ¶ 17.)

According to Plaintiff, on September 3, 2017, when Letterese and Plaintiff were alone in the kitchen, Letterese told Plaintiff to turn off his music, was "verbally aggressive," and threw Plaintiff's phone across the kitchen. (*Id.* ¶¶ 21–22.) Although there was a verbal confrontation between the two of them, Plaintiff alleges that no physical altercation occurred. (*Id.*) However, Letterese reported to the security desk that Plaintiff had assaulted him, and personnel at the desk called the Mount Vernon Police. (*Id.* ¶ 26.) Letterese also provided a written statement to his supervisor from Morrison, in which he detailed an alleged assault. (*Id.* ¶ 25.) Letterese reported that he had "verbally reprimanded" Plaintiff for playing music in the kitchen, which angered Plaintiff, and that Plaintiff had punched Letterese in the face. (*Id.* ¶ 19.) The Mount Vernon Police responded to the scene, interviewed Plaintiff and Letterese, and found no evidence of assault or injury to Letterese. (*Id.* ¶ 27.) Police Officer Jorge Monge ("Monge") was one of the officers who responded to the Facility. (*Id.* ¶ 49.) As a result of Letterese's allegations, Plaintiff was sent home on the day of the incident, and subsequently received a notice of termination, dated September 8, 2017. (*Id.* ¶ 28.) According to Plaintiff, Wartburg produced security camera footage for "[u]nemployment [i]nsurance proceedings," but the videos did not show Letterese, an assault, or any "visible signs of injury or distress." (*Id.* ¶ 23.) Plaintiff states that the "only purported evidence" of the assault were photographs that Letterese took, which Letterese alleged showed his injuries. (*Id.* ¶ 24.)

The Union disputed Plaintiff's termination, and, pursuant to the Collective Bargaining Agreement ("CBA"), the matter was brought before an arbitrator with the American Arbitration Association (the "Arbitrator"). (*Id.* ¶¶ 29, 31.) The CBA specifically provided, "If the Union desires to contest [a] discharge or suspension, it shall give notice to . . . [Defendant] within . . . five . . . days from the date of receipt of notice of discharge or suspension. . . . If the dispute is not resolved . . . within . . . [10] working days thereafter, it shall be submitted to arbitration by either party to th[e] [CBA]." (Aff. of Eric P. Simon, Esq. in Supp. of Mot. To Dismiss ("Simon Aff."), Ex. B ("CBA"), at 28 (Dkt. No. 17-2).)[2] Arbitration hearings took place on April 9, 2018 and July 9, 2018. (Pet. ¶ 31.) According to the Award and Opinion (the "Arbitration Opinion"), the Arbitrator heard testimony from Plaintiff, Letterese, Letterese's supervisor, another supervisor, vice-president of human resources, an administrator, and an employee from the engineering department familiar with the layout of the kitchen and security cameras at the Facility. (*Id.* Ex. 1 ("Arbitrator's Op."), at 40–45 (Dkt. No. 4-1).)[3] The Arbitrator also considered the record submitted by the Union and Defendant, which included photographs of Letterese's alleged injuries and a transcript of testimony by Monge at an unemployment proceeding initiated by Plaintiff. (*Id.* at 40–45, 47 n.8.) According to the Arbitrator, the Union

---

[2] Although this version of the CBA is not the one attached to the Petition, Defendant represents, and Plaintiff does not dispute, that the version of the CBA attached to the original Petition was not the correct version. (Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") 1 n.2 (Dkt. No. 16).) Thus, the Court will refer to this version of the CBA throughout.

[3] Given that the original Petition and accompanying exhibits were filed under one docket number with Defendant's Notice of Removal, the Court uses the ECF page numbers of this document to avoid confusion. Further, because this document was appended to the Petition, the Court may properly consider it on a Motion To Dismiss. *See Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (citation and quotation marks omitted)).

subpoenaed Monge to testify at the arbitration, but he was not available. (*Id.*) The Arbitrator ultimately upheld Plaintiff's termination, and found that Wartburg had "just cause" to terminate him. (Pet. ¶ 32; Arbitrator's Op. 45–49.) In a subsequent proceeding, Plaintiff filed a duty of fair representation charge with the National Labor Relations Board ("NLRB") against the Union. (Letter from Eric P. Simon, Esq., to Court (July 1, 2019) ("July 1 Simon Letter") 1; Letter from Barry D. Haberman, Esq. to Court (July 31, 2019) ("July 31 Haberman Letter") (Dkt. Nos. 27, 31).) On December 21, 2018, an NLRB Regional Director refused to issue a complaint against the Union, and on June 19, 2019, the NLRB's General Counsel denied Plaintiff's appeal of that decision. (July 1 Simon Letter 3–4.)[4]

B. Procedural Background

On November 13, 2018, Plaintiff filed his Verified Petition in the Supreme Court of the State of New York, County of Orange. (Not. of Removal ¶ 1.) Thereafter, on December 27, 2018, Defendant filed a Notice of Removal in this Court and New York State court. (Dkt. No. 2.) Due to a filing error, Defendant's Notice of Removal was re-filed the following day. (Dkt. No. 4.) The Parties participated in a Pre-Motion Conference before the Court on March 5, 2019, and a briefing schedule for the Motions was set. (Dkt. Nos. 10, 13.) Pursuant to that schedule, on April 5, 2019, Plaintiff filed the instant Motion To Remand. (Not. of Mot. To Remand; Pl.'s Mem. of Law in Supp. of Mot. To Remand ("Pl.'s Mem.") (Dkt. No. 14-1); Aff'n of Zachary King, Esq. in Supp. of Mot. To Remand ("King Aff'n") (Dkt. No. 14-2); Aff. of Pl. in Supp. of Mot. To Remand ("Pl. Aff.") (Dkt. No. 14-3).) On the same day, Defendant filed the instant

---

[4] In adjudicating a Motion To Dismiss, the Court may take judicial notice of the NLRB's decision to deny Plaintiff's appeal. *See N.Y. Indep. Contractors All. Inc. v. Consol. Edison Co. of N.Y., Inc.*, No. 16-CV-01172, 2017 WL 773600, at *2 n.4 (S.D.N.Y. Feb. 27, 2017) (taking judicial notice of an NLRB decision). Here, as in *Independent Contractors*, the Court notes the existence of the decision but does not consider it for its truth. *Id.*

5

Motion To Dismiss. (Not. of Mot. To Dismiss; Def.'s Mem.; Simon Aff.) On May 10, 2019, Plaintiff filed a response to the Motion To Dismiss, (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No. 18)), and Defendant filed a response to the Motion To Remand, (Def.'s Mem. of Law in Opp'n to Mot. To Remand ("Def.'s Opp'n") (Dkt. No. 20)). On June 7, 2019, Defendant filed a Reply in further support of its Motion To Dismiss. (Def.'s Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Reply") (Dkt. No. 26).)

## II. Discussion

Given that "[t]he federal courts are under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and must do so before reaching the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1988), the Court first considers Plaintiff's Motion To Remand to determine whether the Court has subject-matter jurisdiction over the Petition, and then, to the extent necessary, Defendant's Motion To Dismiss.

### A. Motion To Remand

Plaintiff argues that his state-law causes of action are not preempted by the Labor Management Relations Act ("LMRA"), and, therefore, the Court lacks federal subject matter jurisdiction to adjudicate his claims. (Pl.'s Mem. 1–2, 8–13.) He contends that although his employment was subject to a CBA, he has not alleged any violations or breaches of the CBA, and instead protests "the sufficiency of the arbitration proceeding itself" under New York State law and the American Arbitration Association Labor Arbitration Rules. (*Id.* at 2, 11–13.) Defendant argues that this Court has original jurisdiction over the Action under § 301 of the LMRA, which has "the requisite extraordinary preemptive force to support complete

preemption," *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (citations omitted), and thus, the Action should not be remanded, (Def.'s Opp'n 1–2, 3–12).

### 1. Removal

"A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (citation omitted). "A civil claim filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim." *Id.* (citing 28 U.S.C. § 1441(a)). "District courts have original jurisdiction over 'federal question' cases, or cases 'arising under the Constitution, laws, or treaties of the United States.'" *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298 (2d Cir. 2012) (quoting 28 U.S.C. § 1331). "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citation and some quotation marks omitted). "Under the 'well-pleaded complaint rule,' federal subject matter jurisdiction typically exists only 'when the plaintiff's well-pleaded complaint raises issues of federal law,' and not simply when federal preemption might be invoked as a defense to liability." *Montefiore*, 642 F.3d at 327 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)); *see also Davila*, 542 U.S. at 207 ("[T]he existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and a defendant may not generally remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." (alteration, citations, and some quotation marks omitted)). "There is an exception, however, to the well-pleaded complaint rule. When a federal statute wholly displaces the state-law cause of action through complete [preemption], the state claim can be removed." *Id.* (citation, alteration, and quotation marks omitted). This exception exists because "[w]hen the federal statute completely [preempts] the state-law cause of

action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Thus, if a plaintiff "raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Sullivan*, 424 F.3d at 272 (footnote omitted).

### 2. General LMRA Preemption Principles

"Under the complete[]preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims." *Id.* (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65); *see also Bunge Italia, SPA v. Am. Express Bank Ltd.*, No. 07-CV-1785, 2007 WL 2077111, at *3 (S.D.N.Y. July 16, 2007) (same). Consistent with this principle, a case may be removed "'when a federal statute wholly displaces the state-law cause of action through complete preemption.'" *Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8). However, complete preemption is such an extraordinary statutory event that the Supreme Court has found only three statutes that reflect Congress' intent to completely preempt a field, one of which is § 301 of the LMRA. *See Sullivan*, 424 F.3d at 272.

Section 301 states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court in the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). It is well established that § 301 is

> a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts. Thus, when a state claim alleges a violation of a labor contract, the Supreme Court has held that such

8

claims are preempted by [§] 301 and must instead be resolved by reference to federal law.

*Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (per curiam) (citation omitted); *see also Severin v. Project Ohr, Inc.*, No. 10-CV-9696, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011) (same); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 595–96 (E.D.N.Y. 2007) (same). "Section 301 preempts not only claims directly alleging that a party has violated a provision of a CBA, but also those state-law actions that require interpretation of the terms of a CBA." *McLean v. Garage Mgmt. Corp.*, No. 10-CV-3950, 2011 WL 1143003, at *2 (S.D.N.Y. Mar. 29, 2011); *see also Vera*, 335 F.3d at 114 (explaining that questions "'relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law,'" and that where "'resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as [preempted] by federal labor-contract law'" (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220 (1985))); *Severin*, 2011 WL 3902994, at *4 (same); *Levy*, 498 F. Supp. 2d at 595–96 (same). Thus, § 301 of the LMRA will completely preempt a state-law claim if the claim is "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citation and quotation marks omitted).

"Not every suit concerning employment or tangentially involving a CBA . . . is preempted by [§] 301." *Vera*, 335 F.3d at 114 (quotation omitted). If a plaintiff brings an action to enforce a state-law "rule[ ] or establishe[d] right[ ][or] obligation[ ] that [is]

9

independent of a labor contract," that claim is not preempted. *Id.* at 115 (citation omitted). Indeed, "[e]ven if resolving a dispute under a state-law claim and the [CBA] would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 [preemption] purposes." *Severin*, 2011 WL 3902994, at *4 (citation and some quotation marks omitted); *McLean*, 2011 WL 1143003, at *3 (same). "Nor would a state claim be preempted if its application required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Vera*, 335 F.3d at 115 (citation and quotation marks omitted); *see also Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) ("For example, § 301 does not mandate preemption of state law claims requiring mere referral to a CBA to determine damages owed." (citation and quotation marks omitted)); *McLean*, 2011 WL 1143003, at *3 (same); *Levy*, 498 F. Supp. 2d at 596 (same).

The Second Circuit has cautioned that "[t]he boundary between claims requiring interpretation of a CBA and ones that merely require such an agreement to be consulted is elusive." *Vera*, 335 F.3d at 115 (alteration in original) (citation and quotation marks omitted); *see also Ferrara v. Leticia, Inc.*, No. 09-CV-3032, 2012 WL 4344164, at *3 (E.D.N.Y. Sept. 21, 2012) (same). One district court has attempted to clarify this "elusive" line by crafting a two-part test to determine whether a claim is preempted: "First, a court must analyze the 'legal character' of the claim and whether it is truly independent of rights under the [CBA]. The starting point in making such a determination is consideration of the elements of [plaintiff's] stated claims." *Levy*, 498 F.

Supp. 2d at 596 (citations omitted). "Second, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless substantially dependent on analysis of a [CBA]. If such dependence exists, the claim is preempted by § 301 . . . ." *Id.* (citations and quotation marks omitted).

### 3. Application

Plaintiff asserts four causes of action under New York Civil Practice Law and Rules ("CPLR") § 7511(b)(1)(iii)—(1) that the Arbitrator's award was "violative of a strong public policy" because of the standard applied by the Arbitrator; (2) that the Arbitrator exceeded his authority by failing to take Monge's testimony; (3) that the Arbitrator's award was "totally irrational and lacks evidentiary support"; and (4) that Arbitrator's award was "arbitrary and capricious" because it was "taken without sound basis in reason or regard to the facts." (Pl.'s Mem. 12–14; Pet. ¶¶ 33–72.)

"[T]here is ample case law in which federal courts have relied on jurisdiction pursuant to § 301 of the LMRA to confirm or vacate an arbitration award." *Basir v. New Carlton Rehab. & Nursing Ctr.*, No. 13-CV-5726, 2015 WL 5579863, at *4 (E.D.N.Y. Sept. 22, 2015) (citation and quotation marks omitted); *see also Jamaica Buses, Inc. v. Transp. Workers' Union, AFL-CIO, Local 100*, No. 02-CV-2533, 2003 WL 1621026, at *2 (E.D.N.Y. Mar. 26, 2003) (same) (collecting cases). This is because a plaintiff-petitioner's right to arbitration is "founded directly on rights created by [CBAs]," *Caterpillar*, 482 U.S. at 394, and such claims often require the interpretation and application of the CBA. *See Basir*, 2015 WL 5579863, at *4 (finding that removal of a petition seeking vacatur of an arbitrator's determination that the plaintiff's termination was for good cause was proper because the plaintiff's claims "center[ed] directly on rights created by the CBA . . . and require[d] the application and interpretation of the CBA"

11

(citation omitted)); *Skyview Owners Corp. v. Serv. Emps. Int'l Union, Local 32BJ, AFL-CIO*, No. 04-CV-4642, 2004 WL 2244223, at *3, n.35 (S.D.N.Y. Oct. 5, 2004) (finding that the petition seeking vacatur of an arbitration award, originally brought in state court under CPLR § 7511, was properly removed because the CBA governed the terms and conditions of employment and provided for arbitration of disputes). Indeed, other courts in the Southern District have rejected arguments similar to Plaintiff's, asserting that because a petition does not allege an actual violation of a CBA and involves claims arising only under state law, the case must be heard in state court. *See Collaku v. Temco Serv. Indus., Inc.*, No. 18-CV-4054, 2019 WL 452052, at *4 (S.D.N.Y. Feb. 5, 2019) ("[The] [p]etitioner's argument [that she alleged rights not conferred to her by a CBA that did not require interpretation of a CBA] elides a critical distinction between her underlying grievance and this action."); *Basir*, 2015 WL 5579863, at *3 ("[E]ven if a plaintiff's complaint does not expressly state a federal claim, if any of the state claims put forward by a plaintiff are preempted by [§] 301, the action may properly be removed to federal court." (citation omitted)); *Serrano v. Helmsley Park Lane Hotel*, No. 06-CV-6267, 2007 WL 1412315, at *1 n.1, 3 (S.D.N.Y. May 11, 2007) (denying the plaintiff's motion to remand a petition requesting vacatur or reversal of an arbitrator's award because the plaintiff's layoff and right to arbitration were governed by an "Industry-Wide Agreement" ("IWA")); *Jamaica Buses*, 2003 WL 1621026, at *3 ("[The] [p]laintiff argues . . . that where jurisdiction under § 301 is not grounded in a party's assertion that there is a violation of the bargaining agreement, § 301 does not operate to provide federal court jurisdiction. The court disagrees." (record citation and quotation marks omitted)).

As noted by Defendant, a recent decision by another court in the Southern District is particularly instructive, as it delves into the reasons why removal of such claims is proper, even

when a CBA violation is not explicitly alleged in a state-filed petition. In *Collaku*, the petitioner sought to vacate an arbitrator's decision on alleged violations of the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"), arguing, like Plaintiff here, that the arbitrator exceeded his power under CPLR § 7511(b)(1)(iii) because the decision was "irrational," "not based in evidence or reason," and "not supported by the record." 2019 WL 452052, at *4 (record citation and quotation marks omitted). After taking a "deep dive into the origins of the arbitrator's purported rationality obligation," Judge Caproni found that the arbitrator's "alleged obligation to issue a rational decision based in evidence and reason . . . and [the] [p]etitioner's corresponding right to an arbitral award that [wa]s rational and based in evidence or reason . . . [was] a claim[] founded directly on rights created by a CBA," and thus was "completely preempted by § 301 of the LMRA." *Id.* at *4–5 (quotation marks omitted) (quoting *Allis-Chalmers*, 471 U.S. at 212–13; *Caterpillar*, 482 U.S. at 394). Although Judge Caproni recognized that the petition did not allege any actual CBA violations, and that the petitioner's claim required less "substantial interpretation of a CBA" than other cases where removal was deemed proper, *id.* at *6 (referring in part to *Basir*, 2015 WL 5579863, at *3–4), Judge Caproni ultimately found that because New York law "purports to imply into the CBA arbitration clause" the right to a rational decision by an arbitrator, the petitioner's claims were "founded directly on rights created by a [CBA]." *Id.* at *7 (alterations and quotation marks omitted) (quoting *Caterpillar*, 482 U.S. at 394; *Allis-Chalmers*, 471 U.S. at 220).[5]

---

[5] Plaintiff argues that *Collaku* was "wrongly decided" because "[e]ven though the . . . [c]ourt recognized that the rationality obligation is statutorily imposed and that New York courts incorporate[] [it] into the CPLR, the [c]ourt . . . decide[d] that the Article 75 claims were preempted because the rationality requirement was integrated into the CBA." (Pl.'s Opp'n 14.) Plaintiff's argument misses the mark. Judge Caproni found that "New York courts understand the rationality obligation to be a statutorily-imposed constraint on an arbitrator's power over a dispute that is *imputed into the legal instrument* [such as a statute or CBA] . . . from which the

13

Here, Plaintiff also claims that the Arbitrator exceeded his authority under CPLR § 7511(b)(1)(iii) because the award was irrational, lacking in evidentiary support, and "arbitrary and capricious" because it was "taken without sound basis in reason or regard to the facts." (Pet. ¶¶ 45–72.)[6] Further, while the underlying grievances of the petitioner in *Collaku* were "undoubtedly . . . independent of a labor contract," 2019 WL 452052, at *4 (citation and quotation marks omitted), Plaintiff's underlying grievance is not. Instead, the issue underlying the Petition—whether there was sufficient evidence for Plaintiff's termination to be "for cause"—is governed by the CBA. (*See* CBA 27 ("[Defendant] retains the exclusive right to . . . discharge *for cause*, discipline[,] and lay off the employees covered by this [CBA]." (emphasis added)); Arbitrator's Op. 40 (framing the "issue in dispute" as, "[d]id [Defendant] have just cause to discharge [Plaintiff]?").) In an apparent attempt to avoid interpretation of a CBA provision, Plaintiff argues that he is not challenging whether there would have been cause to

---

arbitrator derives his authority." *Collaku*, 2019 WL 452052, at *5 (emphasis added). Thus, "[t]o attack an arbitrator's award in a labor dispute as irrational under New York law . . . is essentially to assert that the arbitrator violated a duty implied into the parties' arbitration agreement[,] and is, therefore, an attack designed to vindicate a right created by the [CBA] . . . of which the arbitration agreement is an essential part." *Id.* at *6 (citations, alterations, and quotation marks omitted). Here, too, the Arbitrator's authority was derived from a CBA, under which "[a]rbitration . . . was compulsory." (Pet. ¶ 66.)

[6] Plaintiff also claims that the Arbitrator's award violated public policy because the Arbitrator did not determine whether Plaintiff was "proven guilty beyond a reasonable doubt." (Pet. ¶ 39.) Although Judge Caproni explicitly noted that her holding in *Collaku* was "confined solely to [CPLR §] 7511 petitions seeking to vacate a decision issued by an arbitrator pursuant to an arbitration agreement contained in a CBA on the ground that the decision exceeded the arbitrator's power within the meaning of [§] 7511(b)(1)(iii)," 2019 WL 452052, at *7 n.10 (citation, alterations, and quotation marks omitted), at least one other court in the Southern District has denied a motion to remand where a petitioner asserted a similar public policy claim, *see Jamaica Buses, Inc.*, 2003 WL 1621026, at *3 (denying a motion to remand a petition to vacate an arbitration award as violative of public policy and irrational, despite the plaintiff's argument that the petition did not relate to an alleged violation of the CBA and instead related to the employee's termination for alleged sexual harassment, because § 301 "governs claims founded directly on rights created by [CBAs]," of which arbitration of an employment decision was one (citation omitted)).

14

terminate him if he had assaulted Letterese, but rather is challenging the Arbitrator's decision based on the evidence and the arbitration proceedings themselves. However, the heart of Plaintiff's claim is that the Arbitrator erred in his assessment of the evidence and ultimate finding that it supported Defendant's decision to terminate Plaintiff for cause, as required by the CBA. *See Helmsley Park Lane Hotel*, 2007 WL 1412315, at *3 (rejecting the plaintiff's argument that the court lacked subject matter jurisdiction because he was challenging only the rationality of an arbitrator's decision to uphold his layoff because his "layoff [was] governed by . . . the IWA and [the plaintiff's] right to arbitration . . . [was] governed by . . . the IWA. As a result, an action to vacate the arbitration award [wa]s properly brought in [federal] [c]ourt." (citations, alterations, and quotation marks omitted)); *Jamaica Buses*, 2003 WL 1621026, at *3 (denying a motion to remand when "the arbitration award [reversing an employee's termination based on sexual harassment allegations] most certainly resulted from *an application of* the CBA" (emphasis in original)). Thus, determining the propriety of the Arbitrator's award will require the Court to interpret the meaning of "for cause" in the CBA, and analyze whether the evidence presented, or not presented, at the hearing was sufficient to support the Arbitrator's conclusion and application of the "for cause" standard in the CBA. *Cf. Civardi v. General Dynamics Corp.*, 603 F. Supp. 2d 393, 397 (D. Conn. 2009) (finding that the plaintiff's allegations of wrongful discharge arose from the CBA because the CBA "only allow[ed] for the termination of union employees for just cause" and "establish[ed] a grievance and arbitration procedure to resolve disputes over employee terminations"; thus, "resolution of the . . . wrongful discharge claim [wa]s dependent on interpretation of the CBA").

  Plaintiff's argument that Defendant cannot overcome the rule that "a federal question must appear on the face of a complaint" by asserting a federal question "in a defensive

15

argument," (*see* Pl.'s Mem. 9 (quoting *Caterpillar*, 482 U.S. at 398–99)), ignores the principle that a state claim must be removed when a state-law cause of action is completely preempted by federal law, such as LMRA § 301, which "governs claims founded directly on rights created by [CBAs]," *Caterpillar*, 482 U.S. at 394, and claims not "truly independent of rights under the CBA," *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 422 (S.D.N.Y. 2013) (alteration omitted). Further, the cases relied on by Plaintiff are distinguishable, as they do not arise out of arbitration proceedings governed by a CBA, and many of them relate to state claims that courts have specifically established as independent of CBAs. *See, e.g.*, *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228–29 (S.D.N.Y. 2016) (finding that the plaintiffs' claims were not preempted because courts have "routinely held" that unpaid wage and notice claims under the New York Labor Law ("NYLL") are independent of CBA wage-related provisions); *Kaye*, 975 F. Supp. 2d at 422 (citing "well settled" law that claims pursuant to the NYLL are "truly independent of rights under the CBA," and that the plaintiff's other claim involved conduct prior to when the CBA was effective (citation and quotation marks omitted)). Conversely, with respect to the instant Action, "there is ample case law in which federal courts have relied on jurisdiction pursuant to § 301 of the LMRA to confirm or vacate an arbitration award," *Basir*, 2015 WL 5579863, at *4 (citation and quotation marks omitted), even when, as Plaintiff argues here, there is no reference to federal law on the face of the Petition. Thus, the cases cited by Plaintiff are distinguishable, and do not control the Court's decision.

Accordingly, the Court finds that Plaintiff's claims are completely preempted by § 301 of the LMRA, and Plaintiff's Motion To Remand is denied.

B. Motion To Dismiss

In response to Defendant's Motion To Dismiss, Plaintiff requests leave to file an amended verified petition, or amended complaint, which would join the Union as a Defendant and allege that the Union breached its duty of fair representation to Plaintiff. (Pl.'s Opp'n 18.) Given that this is the Plaintiff's first request to amend and the first adjudication of Plaintiff's claims, and "in light of the fact that [Plaintiff's] claim . . . might be barred if [Plaintiff] does not plead that the Union breached its duty of fair representation," *Delmonico's Hotel*, 1992 WL 251447, at *4, the Court grants Plaintiff's request to amend and denies Defendant's Motion To Dismiss without prejudice. *See id.* (granting the plaintiff's request for leave to join a union as a defendant and set forth facts alleging the union's breach of its duty of representation in connection with the plaintiff's action for confirmation of an arbitrator's award). Although Defendant argues that any claims against the Union would be time-barred, (Def.'s Reply 13 n.2), this assertion, as well as other arguments raised in Defendant's memoranda, may be raised again at a later date once Plaintiff has had the opportunity to amend.[7]

III. Conclusion

For the foregoing reasons, Plaintiff's Motion To Remand is denied, and Defendant's Motion To Dismiss is denied without prejudice to Defendant's ability to re-file the Motion after

---

[7] On July 1, 2019, Defendant sent to the Court an NLRB decision rejecting Plaintiff's appeal of the NLRB Regional Director's refusal to issue a complaint against the Union. (July 1 Simon Letter 3–4.) Defendant's letter does not suggest, nor does it provide case law supporting, that the Court is bound by this decision as it relates to Plaintiff's possible claims against the Union. (*See id.* at 1–2.) Indeed, district courts in the Second Circuit have found the opposite with respect to NLRB decisions not to issue complaints. *See Kazolias v. IBEW LU 363*, No. 09-CV-7222, 2010 WL 11655375, at *4 (S.D.N.Y. June 3, 2010) ("[I]n instances where the NLRB simply decides against issuing a complaint, this decision will generally not preclude the parties from further litigating the issues raised before the NLRB . . . ." (citations omitted)) (report and recommendation) (collecting cases); *Local 812 GIPA v. Canada Dry Bottling Co. of N.Y.*, Nos. 98-CV-3791, 98-CV-6774, 2000 WL 1886616, at *2 (S.D.N.Y. Dec. 29, 2000) (noting that while

Plaintiff has amended the Verified Petition. As such, the Court grants Plaintiff leave to file an Amended Complaint.

Plaintiff may file an Amended Complaint with the Court within 30 days of the date of the issuance of this Opinion. The Amended Complaint must contain all of the claims, parties, and factual allegations that Plaintiff wishes the Court to consider. Plaintiff is further advised that the Amended Complaint will completely replace, not supplement, the instant Verified Petition. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice. Further, if Defendant chooses to oppose the Amended Complaint and the Court grants Defendant's motion, Plaintiff's claims may be dismissed with prejudice as a second adjudication. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citation, alteration, and quotation marks omitted)).

---

the refusal of the NLRB to issue a complaint should not be preclusive, it is "axiomatic that the [c]ourt . . . can defer to the judgment of government agencies"); *Delmonico's Hotel*, 1992 WL 251447, at *4 (allowing the plaintiff to amend his complaint seeking confirmation of an arbitration award, even in light of the NLRB's dismissal of the plaintiff's charges against the defendant and the union).

Thus, although the NLRB's decision does not preclude Plaintiff from filing an Amended Complaint, it may well constitute persuasive evidence as to the validity of Plaintiff's claims at a later stage of these proceedings.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 15, 22).

SO ORDERED.

Dated: February 13, 2020
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE